**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| VALENTINA L. O'CONNOR, as next friend and guardian of Michael W. O'Connor, | ) ) ) ) | | |
| Plaintiff, | ) ) | | |
| vs. | ) ) | | |
| DEPUTY ARTHUR WRIGHT, Star No. 10552, an individual; DEPUTY T. MERRIWEATHER, Star No. 11144, an individual; DEPUTY J. HERRERA, Star No. 11369, an individual; the COUNTY OF COOK, a Body Politic and Corporate; the CITY OF CHICAGO, a municipal corporation; OFFICER CHRISTINE ELLMAN, Star No. 2133, an individual; OFFICER DERRICK SHINN, Star No. 2207, an individual; OFFICER ANNE M. LEWIS, Star No. 1972, an individual; OFFICER CHARLES LONG, Star No. 1171, an individual; OFFICER CHANTELL M. MOORE, Star No. 2375, an individual; BRIAN E. YOUNG, Chicago Police Department Employee No. 55120, an individual; OFFICER J.M. RUMBAUGH, Star No. 5876, an individual; OFFICER JOHN OWENS, Star No. 7074, an Individual; and OFFICER VINCENT BARNER, Star No. 19562, an individual; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. | 2015 CV 8066<br><br>Judge Ruben Castillo<br><br>Magistrate Judge Kim<br><br>Jury Demanded |
| Defendants. | ) ) | | |

## DEFENDANT CITY OF CHICAGO AND DEFENDANT CHICAGO POLICE OFFICERS' JOINT ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND JURY DEMAND

Defendant City of Chicago, jointly with Chicago Police Officers Christine Ellman, Anne

M. Lewis, Chanell M. Moore, Jeffrey Rumbaugh, John Owens, Vincent Barner, Charles Long,

and Derrick Shinn (collectively "Defendants"),[1] through one of their attorneys, David T. Hartmann, Assistant Corporation Counsel, for their answer, defenses and jury demand to Plaintiff's second amended complaint state as follows:

### Parties, Jurisdiction and Venue

1.      Plaintiff VALENTINA O'CONNOR ("Mrs. O'Connor") is the legal guardian of MICHAEL W. O'CONNOR ("Michael"), her mentally disabled son. (See, Order Appointing Plenary Guardian For Disabled Person dated July 16, 2013, attached as Exhibit A.)

**ANSWER**: Upon information and belief, Defendants admit the allegations of this paragraph.

2.      Plaintiff VALENTINA O'CONNOR, as next friend and guardian of MICHAEL W. O'CONNOR, is a resident of the Northern District of Illinois.

**ANSWER**: Upon information and belief, Defendants admit the allegations of this paragraph.

3.      At all relevant times, Defendant Deputy Arthur Wright, Star No. 10552 ("Wright"), was employed by the Cook County Sheriff's Office and acted under the color of law and in the course and scope of his employment with the County Sheriff's Office.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

4.      At all relevant times, Defendant Deputy T. Merriweather, Star No. 11144 ("Merriweather"), was employed by the Cook County Sheriff's Office and acted under the color of law and in the course and scope of his employment with the Cook County Sheriff's Office.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

_____

[1] A Statement Noting Death of Defendant Brian E. Young was filed under Dkt. No. 65.

5.      At all relevant times, Defendant Deputy J. Herrera, Star No. 11369 ("Herrera"), was employed by the Cook County Sheriff's Office and acted under the color of law and in the course and scope of his employment with the Cook County Sheriff's Office.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

6.      Defendant Cook County is a party for indemnification purposes pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947, 948 (7th Cir. 2003).

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

7.      At all relevant times, Defendant Officer Christine Ellman, Star No. 2133 ("Ellman"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of her employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

8.      At all relevant times, Defendant Officer Derrick Shinn, Star No. 2207 ("Shinn"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of his employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

9.      At all relevant times, Defendant Officer Anne M. Lewis, Star No. 1972 ("Lewis"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of her employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

10.     At all relevant times, Defendant Officer Charles Long, Star No. 1171 ("Long"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of his employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

11.     At all relevant times, Defendant Officer Chantell M. Moore, Star No. 2375 ("Moore"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of her employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph but deny any wrongdoing.

12.     At all relevant times, Defendant Brian E. Young, Chicago Police Department Employee No. 55120 ("Young"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of his employment with the Chicago Police Department.

**ANSWER**:  Upon information and belief, Defendants admit the allegations of this paragraph but deny any wrongdoing. *See also* Statement Noting Death at Dkt. No. 65.

13.     At all relevant times, Defendant Officer J.M. Rumbaugh, Star No. 5876 ("Rumbaugh"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of his employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

14.     At all relevant times, Defendant Officer John Owens, Star No. 7074 ("Owens"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of his employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

15.     At all relevant times, Defendant Officer Vincent Barner, Star No. 19562 ("Barner"), was employed by the Chicago Police Department and acted under the color of law and in the course and scope of his employment with the Chicago Police Department.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

16.     Defendant City of Chicago is an Illinois municipal corporation, responsible for policies and procedures governing the Chicago Police Department, including the Defendant officers and employees.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

17.     The City of Chicago is the indemnifying entity for any legal judgment entered against the Defendants and employees based on the allegations contained in this Complaint.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

18.     All events described in this complaint occurred in Cook County, Illinois.

**ANSWER**: Defendants admit the allegations of this paragraph but deny any wrongdoing.

19.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §1988 to redress the deprivation under color of law of Michael's rights as secured by the United States Constitution.

**ANSWER**: Defendants admit that Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §1988, but deny any wrongdoing.

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district as well.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

## FACTS

21.     Michael has been treated for mixed bipolar psychosis and ADHD since 2004, when he was 14 years old.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

22.     For his mental illnesses, Michael has been prescribed Depakote, Adderall, Zyprexa, and Vyvanse.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in this paragraph.

23.     Michael also takes Levothyroxine for hypothyroidism as well as blood pressure medication.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

24. On or about May 6, 2014, Michael was arrested.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

25. He was then taken to the Chicago Police Department 22nd District Station Lockup.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

26. The 22nd District Station Supervisors on duty between May 6, 2014 and May 9, 2014 when Michael was in Lockup were Ellman, Shinn, Long, Lewis, and Moore.

**ANSWER**: Defendants admit the allegations of this paragraph, but deny any wrongdoing.

27. At all relevant times, the District Station Supervisors were responsible for ensuring that arrestees received proper medical care.

**ANSWER**: Defendants admit that District Station Supervisors are responsible for ensuring that arrestees receive proper medical care, as long as they are aware that arrestees are in need of medical care. Defendants further deny any allegations of wrongdoing.

28. Rumbaugh and Young processed Michael into the Lockup.

**ANSWER:** Defendants admit that Defendant Young processed Michael into the Lockup but deny the remaining allegations of this paragraph.

29. The processing Chicago Police officers and/or employees are required to record, among other things, whether arrestees are taking medication or have health concerns.

**ANSWER:** Defendants admit the allegations of this paragraph.

30.     Neither Rumbaugh nor Young made notes nor informed anyone about Michael's illnesses and/or need for medication.

**ANSWER:** Defendants deny the allegations of this paragraph.

31.     Mrs. O'Connor arrived at the police station shortly after her son.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

32.     Mrs. O'Connor gave a Chicago Police Department employee Michael's medications.

**ANSWER**: Defendants deny the allegations of this paragraph as to themselves, and lack sufficient information to admit or deny the allegations of this paragraph as to the remaining allegations contained in this paragraph.

33.     The employee scoffed at Mrs. O'Connor and replied, "Nobody ever died of mental illness."

**ANSWER**: Defendants deny the allegations of this paragraph as to themselves and lack sufficient information to admit or deny the allegations of this paragraph as to the remaining allegations contained in this paragraph.

34.     Michael did not receive his medication for several days while he was in police custody.

**ANSWER**: Defendants deny the allegations of this paragraph.

35.     Michael could not sleep for several days because he did not receive his medication.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

36.     On the morning of May 8, 2014, under Lewis' direction, Owens took Michael to Little Company of Mary Hospital to receive medication.

**ANSWER:**  Defendants admit the allegations of this paragraph.

37.     Whether Michael received medication during this hospital visit is unclear.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

38.     Late at night on May 8, 2014, under Ellman's direction, Barner took Michael to Little Company of Mary to receive medication.

**ANSWER:**  Defendants admit the allegations of this paragraph.

39.     At Little Company of Mary, Michael was forced to take Vyvanse, a central nervous system stimulant.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

40.     Michael told Barner that he had not slept in days and thus should not take a stimulant in the middle of the night, especially on an empty stomach.

**ANSWER**: Defendants deny the allegations of this paragraph.

41.     Barner threatened Michael with staying in the police station for several more days if he did not take the Vyvanse.

**ANSWER:**  Defendants deny the allegations of this paragraph.

42.     Michael then took the Vyvanse.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

43.     Michael was then taken back to the Police Department.

**ANSWER**: Defendants admit that at some point Plaintiff was transported back to the 22nd District Police Station, but deny any inference of wrongdoing.

44.     Michael could not sleep the rest of the night because he took Vyvanse.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

45.     The Vyvanse made Michael's heart race, it made him panic, and it made him go into psychosis.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

46.     On or about May 9, 2014, Michael appeared in bond court at 2650 South California Avenue.

**ANSWER:** Upon information and belief, Defendants admit the allegations of this paragraph.

47.     When the Assistant State's Attorney read Michael's charges, Michael responded with an outburst.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

48.     This outburst occurred because Michael had not received the proper medication and instead received a stimulant after being un-medicated for days.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

49.     In response to his outburst, Wright, Merriweather, and Herrera punched Michael in the face, tackled him, pushed him to the ground, handcuffed him behind his back, and otherwise beat him.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

50.     Wright, Merriweather, and Herrera then had everyone in the courtroom evacuate.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

51.     Wright, Merriweather, and Herrera then dragged Michel into a back room.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

52.     Wright, Merriweather and Herrera proceeded to kick Michael in the face, ribs, and groin and otherwise beat him.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

53.     As Wright, Merriweather, and Herrera were kicking him, Michael yelled, "Please stop!"

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

54.     Wright, Merriweather, and Herrera were laughing and high fiving as they beat Michael.

**ANSWER**:  Defendants lack sufficient information to admit or deny the allegations of this paragraph.

55. Michael thought Wright, Merriweather, and Herrera were going to kill him.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

56. Michael was then taken to Mt. Sinai Hospital to be treated for his injuries.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

57. Michael remained at Mt. Sinai Hospital for three days, until May 12, 2014, where he was in and out of consciousness.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

58. While at Mt. Sinai Hospital, Michael was chained to the bed, not allowed to make any phone calls, and received a rash from not being allowed to shower.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

59. After being released from Mt. Sinai, Michael was treated in Cermak Hospital for another week.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

60. Michael was then transported to the Cook County Jail.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

61. As a result of this beating, Michael suffered and continues to suffer aggravation of his mental illness, PTSD, a concussion, a cracked rib, displaced vertebra, black eyes, severe

bruising, a fractured nose, chipped tooth, severe headaches, amnesia, twitching, and a misaligned jaw, which causes him difficulty chewing.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph and further deny any allegations of wrongdoing.

62. On or about May 27, 2014, a civil rights attorney, Jonathan Ksiazek, submitted a Freedom of Information Act ("FOIA") Request to the Cook County Sheriff's Office for records relating to this incident.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

63. This FOIA request put defendants on notice that they might be sued.

**ANSWER:** Defendants deny the allegations in this paragraph to the extent that it relates to the Defendant City of Chicago and Defendant Chicago Police Officers and Employees. Defendants lack sufficient information to admit or deny the allegations of this paragraph as it pertains to all others Defendants.

64. On May 28, 2014, Wright signed a sworn complaint stating that Michael struck him in the chest with a closed fist on May 9, 2014.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

65. Michael was then charged with battery in the Circuit Court of Cook County Case No. 14M1209258.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

66. The Cook County State's Attorney's Office ("CCSAO") elected to proceed on Michael's other case (i.e., the case that for which he was in bond court on May 9, 2014) before proceeding on the battery case.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

67. The CCSAO also moved to stay this lawsuit until the battery case was resolved. In other words, Michael was not able to receive a trial on the battery case until his other case was over.

**ANSWER**: Defendants admit that at some point this matter was stayed. Defendants lack sufficient information to admit or deny the remaining allegations of this paragraph.

68. The CCASO decision to elect on Michael's other case was for the purpose of delaying this lawsuit.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

69. Michael's other case was resolved in June 2017.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

70. Thus, the battery case was set for trial on August 22, 2017.

**ANSWER**: Upon information and belief, Defendants admit the allegations of this paragraph.

71. In early August, 2017, through independent investigation, Michael's attorneys received a nine (9) page Cook County Sheriff's report of an investigation of the May 9, 2014 incident.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

72.     This report includes statements from eyewitnesses to the incident, including assistant state's attorneys and court personnel.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

73.     This report was never tendered in discovery in Michael's battery case.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

74.     This report exonerated Michael of battery against Wright.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

75.     Michael's attorneys provided this report to the CCSAO.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

76.     Upon information and belief, one or more assistant state's attorneys prosecuting the battery case then met with one or more of the investigators or witnesses referenced in the report.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

77.     Then, on August 22, 2017, the day the trial was set to begin, the CCSAO dismissed the battery case via a nolle prosequi motion.

**ANSWER**: Upon information and belief, Defendants admit the allegations of this paragraph.

### COUNT I- UNREASONABLE FAILURE TO PROVIDE MEDICAL CARE
**(Defendant Chicago Officers and Employees Ellman, Shinn, Lewis, Long, Moore, Young, Rumbaugh, Owens, and Barner)**

62.     Each of the above Paragraphs is incorporated as if restated herein.

**ANSWER**: Defendants' answers to the foregoing paragraphs 1-77 are incorporated as though fully set forth.

63.     Michael's detention in the 22nd District Lockup from May 6, 2014 through the morning of May 9, 2014 was prior to his Gerstein hearing.

**ANSWER:** Defendants deny the allegations of this paragraph.

64.     Michael O'Connor's diagnosed mixed bipolar disorder and ADHD are serious medical conditions.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph.

65.     The aforementioned Defendant Chicago Police Officers and Employees knew about Michael's medical conditions and need for medication because his mother, Valentina O'Connor, told them about his conditions and gave them Michael's proper medication.

**ANSWER**: Defendants deny the allegations of this paragraph.

66.     The aforementioned Defendant Chicago Police Officers and Employees knew about Michael's medical conditions and need for medication because he told them about his conditions and need for medication.

**ANSWER**: Defendants deny the allegations of this paragraph.

67.     The aforementioned Defendant Chicago Police Officers and Employees knew about Michael's medical conditions and need for medication because he was symptomatic while in the lockup.

**ANSWER**: Defendants deny the allegations of this paragraph.

68.     The aforementioned Defendant Chicago Police Officers and Employees knew about the substantial risk of serious harm to Michael O'Connor if he did not receive his medication.

**ANSWER**: Defendants deny the allegations of this paragraph.

69.     The aforementioned Defendant Chicago Police Officers and Employees unreasonably, deliberately, willfully, and wantonly disregarded Michael's obvious and serious medical needs and risks to his health and failed to take appropriate steps to provide him with his medication for several days while in their care and custody, thus violating Michael's rights under the Fourth Amendment of the United States Constitution.

**ANSWER**: Defendants deny the allegations of this paragraph.

70.     The aforementioned Defendant Chicago Police Officers and Employees unreasonably, deliberately, willfully, and wantonly disregarded Michael's obvious and serious medical needs and risks to his health by forcing him to take Vyvanse, a stimulant, in the middle of the night and on an empty stomach without being medicated for days.

**ANSWER**: Defendants deny the allegations of this paragraph.

71.     As a result of these violations, Michael suffered while in Lockup by, among other things, being unable to sleep and going into psychosis.

**ANSWER**: Defendants lack sufficient information to admit or deny the allegations of this paragraph. Defendants further deny any allegations of wrongdoing.

72. As a result of these violations, Michael suffered an outburst in court that proximately led to his beating by Defendants Wright, Merriweather, and Herrera.

**ANSWER**:     Defendants deny the allegations of this paragraph.

73. Michael's injuries as a result of this attack include but are not limited to aggravation of his mental illness, PTSD, a concussion, a cracked rib, displaced vertebra, black eyes, severe bruising, a fractured nose, chipped tooth, severe headaches, amnesia, twitching, and a misaligned jaw, which causes him difficulty chewing.

ANSWER: Defendants deny the allegations of this paragraph.

**WHEREFORE**, Defendants request judgment in their favor and against Plaintiff on this Count of Plaintiff's complaint; award them such costs as provided by law; and grant them such other relief as the Court deems just and proper.

## COUNT II – INDEMNIFICATION
### (Defendant City of Chicago)

74. Each of the above Paragraphs is incorporated as if restated herein.

**ANSWER**: Defendants' answers to the foregoing paragraphs 1-73 are incorporated as though fully set forth.

75. Public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER**:  Defendants deny that this is a full and accurate representation of the law.

76. The aforementioned Defendant Chicago Police Officers and Employees were employees of the City of Chicago at the time they committed the aforementioned constitutional violations against Michael O'Connor, and acted within the scope of their employment in committing the aforementioned misconduct.

**ANSWER:** Defendants admit they were acting under color of law, and acted within the scope of their employment at all time relevant to this complaint. Defendants deny the remaining allegations of this paragraph.

**WHEREFORE**, Defendants request judgment in their favor and against Plaintiff on this Count of Plaintiff's complaint; award them such costs as provided by law; and grant them such other relief as the Court deems just and proper.

## COUNT III – EXCESSIVE FORCE
**(Defendants Wright, Merriweather, and Herrera)**

77.     Each of the above Paragraphs is incorporated as if restated herein.

**ANSWER**: Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

78.     At all relevant times, Defendant Wright was employed by the Office Of The Cook County Sheriff and acting under the color of law.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

79.      At all relevant times, Defendant Merriweather was employed by the Office of The Cook County Sheriff and acting under the color of law.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

80.     At all relevant times, Defendant Herrera was employed by the Office Of The Cook County Sheriff and acting under the color of law.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

81.     As described in the preceding paragraphs, by repeatedly kicking Michael in the face, ribs, and groin, Wright, Merriweather, and Herrera subjected him to unreasonable and excessive force in violation of the Michael's rights as guaranteed by the United States Constitution.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

82.     Wright, Merriweather, and Herrera intentionally and forcibly subjected Michael O'Connor to unreasonable and excessive force in that they intentionally, willfully, wantonly, and without legal justification kicked Michael O'Connor about the head and body.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

83.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Michael O'Connor's constitutional rights.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

84.     As a result of Wright, Merriweather, and Herrera's unjustified and excessive use of force, Michael O'Connor suffered and continues to suffer aggravation of his mental illness, PTSD, a concussion, a cracked rib, displaced vertebra, black eyes, severe bruising, a fractured nose, chipped tooth, severe headaches, amnesia, twitching, and a misaligned jaw, which causes him difficulty chewing.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

## COUNT IV – MALICIOUS PROSECUTION
### (Defendant Wright)

85.     Each of the above Paragraphs is incorporated as if restated herein.

**ANSWER**: Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

86.     Wright initiated criminal proceedings against Michael by signing a sworn complaint stating that Michael struck him in the chest with a closed fist.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

87.     There was no probable cause to initiate the criminal proceedings, because Michael never struck Wright in the chest.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

88.     Wright acted with malice because he signed the complaint without probable cause and in order to attempt to shield himself and his colleagues from liability in this lawsuit.

**ANSWER**:  Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

89.     On August 22, 2017, after interviewing eyewitnesses to the incident, the CCASO dismissed the charges against Michael.

**ANSWER:** Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff and Defendants lack sufficient information to admit or deny the allegations of this paragraph.

90.     Michael suffered special injuries and damages beyond the time and expense in defending the criminal case for almost three and a half years including, but not limited to,

extreme stress and anxiety, and being placed in danger while being transported from the Cook County Jail to status hearings.

**ANSWER:** Defendants make no answer to this paragraph as it is directed to employees of the Office of the Cook County Sheriff.

**COUNT V- INDEMNIFICATION**
**(Defendant County of Cook)**

91.     Each of the above paragraphs is incorporated as if restated herein.

**ANSWER:** Defendants make no answer to this paragraph as it is directed to Defendant Cook County.

92.     The Cook County Sheriff's Department is funded by the County of Cook.

**ANSWER:** Defendants make no answer to this paragraph as it is directed to Defendant Cook County.

93.     Thus, the County of Cook is a necessary party as the indemnifier of Defendants Merriweather, Wright, and Herrera of The Cook County Sheriff's Office pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

**ANSWER:** Defendants make no answer to this paragraph as it is directed to Defendant Cook County.

**AFFIRMATIVE DEFENSES**

1. Defendants Officers are government officials, namely police officers, who performed discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendant Officers could have believed their actions to be lawful, in light of clearly established law and the information that Defendant Officers possessed. Defendant Officers are therefore entitled to qualified immunity on Plaintiff's claims under federal law.

2. The Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") protects local public employees from liability for actions committed "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. Willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety or others or their property." 745 ILCS 10/1-210. Thus, because Defendant Officers, were acting in the execution and enforcement of the law and because their alleged acts or omissions did not constitute willful or wanton conduct, they cannot be held liable.

3. Plaintiff has a duty to mitigate his damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened but were not, due to Plaintiff's failure to take reasonable action to minimize those damages.

4. The City of Chicago is immune from the imposition of punitive damages under both state and federal law. Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages. 745 ILCS 10/2-102 (2014); *City of Newport v. Facts Concerts*, 453 U.S. 247, 271 (1981).

5. Defendant Officers cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless each individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).


## JURY DEMAND

Defendants respectfully request a trial by jury.

**DATED:** October 10, 2017

Respectfully Submitted

EDWARD N. SISKEL,

Corporation Counsel for the City of Chicago

By:    */s/David T. Hartmann*
        Assistant Corporation Counsel

Mary S. McDonald, Senior Counsel
Tiffany Harris, Senior Counsel
Gregory Beck, Assistant Corporation Counsel
David T. Hartmann, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
T: (312) 744-0747
F: (312) 744-6566
Atty No. 6309201