IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VALENTINA L. O'CONNOR, as next friend and guardian of Michael W. O'Connor,<br><br>Plaintiff,<br><br>-vs-<br><br>ARTHUR WRIGHT, Deputy Star No. 10552, an individual, et al.,<br><br>Defendants. | ) | Case No. 15 CV 8066<br><br>Chicago, Illinois<br>November 13, 2018<br>10:03 a.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHIEF JUDGE RUBEN CASTILLO

APPEARANCES:

For the Plaintiff: MR. ROBERT D. FINK
Collison Law Offices
134 N. LaSalle Street
Suite 1200
Chicago, IL 60602
(312) 906-7995
E-mail: Rfink@collisonltd.com

For Defendant Wright: MS. KATHLEEN MURPHY
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-5439
E-mail: Kathleen.murphy@cookcountyil.gov

Court Reporter:

KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 2524-A
Chicago, Illinois 60604
Telephone: (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

APPEARANCES: (Continued)

For Defendant, City Of Chicago: MS. EMILY E. DORY
City of Chicago Department of Law
Federal Civil Rights Litigation
30 North LaSalle Street
Suite 900
Chicago, IL 60602
(312) 742-6423
E-mail: Emily.dory@cityofchicago.org

Also Present: MS. VALENTINA L. O'CONNOR
MR. MICHAEL W. O'CONNOR
10732 S. Seeley Avenue
Chicago, IL 60643
(773) 238-0680

(Proceedings heard in open court:)

THE CLERK: 15 CV 8066, O'Connor versus Wright.

THE COURT: Good morning.

MR. FINK: Good morning, Your Honor. Robert Fink, F-I-N-K.

MS. MURPHY: Good morning, Your Honor. Assistant State's Attorney Kathleen Murphy on behalf of sheriff's defendants.

MS. DORY: Good morning, Your Honor. Emily Dory on behalf of the City of Chicago.

THE COURT: Okay.

So you should have known -- I understood there was some objection to the settlement. I just want to say while I'm on the record that there was a full, effective settlement. I communicated, shuttled back and forth with both sides, and there is no situation where what goes on in a courtroom is sort of a playground type of situation, where you can say, oh, yeah, that's what I felt on Tuesday, but on Wednesday, I'm going to take that all back. It just doesn't operate that way.

So I especially want the plaintiff to know that. Do you understand that?

MS. O'CONNOR: Good morning, Your Honor. I do understand that, and I'm very grateful to you for your time and for mediating -- for helping us to mediate and the time

spent on that.

Unfortunately, my son has been prohibited from participating from at least being present, and I was enticed by the counsel to work with him on this because he said he will reduce 50 percent the attorney fees. I already stressed the attorneys' fees need to be included.

Plus it is my son and our family realize this, and we said this all along, this is a threat to public to allow these practices to perpetuate. The same sheriff who pressed aggravated charges on other victims of beatings and assaults and using deadly force against my son and causing all the damage for the rest of his natural life --

THE COURT: Okay. Let me just stop you right now, Mrs. O'Connor.

MS. O'CONNOR: Yes, sir.

THE COURT: Because a lot of what you're saying is just not true. Let's just start with deadly force.

MS. O'CONNOR: Yes.

THE COURT: Your son is very much alive.

MS. O'CONNOR: Sir --

THE COURT: Okay. So, really, in light of what goes on over the weekend, where someone was killed in Midlothian, don't come up here, Mrs. O'Connor, and start talking about deadly force. Do you understand that?

Is that your son right next to you?

MS. O'CONNOR: This is Michael. We haven't had a chance to introduce.

MR. O'CONNOR: Yes. I'm Michael.

THE COURT: Okay. And you're the plaintiff, right?

10:06:13 MR. O'CONNOR: My mom kind of took control of this case. My lawyer prohibited me from being at the settlement, which I really wanted to come.

THE COURT: Okay.

MR. O'CONNOR: I really wanted to be in front of you.

10:06:22 I was going to --

THE COURT: Okay.

MR. O'CONNOR: -- play my role, but he told me I was not allowed to be there. He kicked me and my little brother out and forced my mother --

10:06:32 THE COURT: Well, your mother played a very forceful role, but this lawsuit, sir, is --

MR. O'CONNOR: However, my lawyer wouldn't let me --

THE COURT: Just wait a minute, don't interrupt me --

MR. O'CONNOR: I'm sorry, Your Honor.

THE COURT: -- okay?

MR. O'CONNOR: Apologize.

THE COURT: This lawsuit is named Valentina L. O'Connor as the next friend and guardian of Michael W. O'Connor. Your mother brought this lawsuit. Your mother is

10:06:56 driving this lawsuit, and, more importantly, your mother

settled this case in my presence.

MR. O'CONNOR: I --

THE COURT: And I was a witness to that.

Everything else you're saying I know nothing about, but certainly your mother represented you well during the settlement conference, and that's all I'm going to say, Mr. O'Connor.

MR. O'CONNOR: Thank you, Your Honor.

THE COURT: Now, what are we doing today?

MR. FINK: In light of that, Your Honor, two things.

One, Ms. O'Connor and Michael filed a petition. I don't know, you know, what legal --

THE COURT: Okay.

MR. FINK: -- basis there is for this.

THE COURT: Let me ask you this, Mr. Fink --

MR. FINK: Yes.

THE COURT: -- because Mr. O'Connor just spoke to the Court. Do you want to address what he just said to the Court about how you didn't allow him to come to the settlement conference?

Do you want to address that, or do you want to just stand silent on that?

MR. FINK: What I would like to do and what I think I should do are probably two different things, Your Honor.

THE COURT: Okay.

MR. FINK: I would just indicate that there was a joint decision with the family at a meeting at my office prior to the settlement conference in which the joint decision with the plaintiff was made that it would not be in Michael's best interest to attend these settlement conferences.

THE COURT: Okay. And you understand, just so the record is plain, Mr. O'Connor --

MR. O'CONNOR: He's lying.

THE COURT: -- is standing here nodding his head no, nodding his head no. This is pretty unseemly.

MR. FINK: It is.

MR. O'CONNOR: Anybody from my family can tell you this man is lying right now.

THE COURT: Okay. Mr. O'Connor, this -- this entire lawsuit started when you disrupted a state court proceeding and allegedly were taken back into the lockup and beaten by deputy sheriffs. No use of deadly force, but certainly force was used against you.

MR. O'CONNOR: Still --

THE COURT: Now, let me just caution you, Mr. O'Connor, if I were you, and I'm going to tell you this once and only once and then I'm going to call the deputy U.S. Marshals. Take a seat, sir. Take a seat right now and don't say another word.

Now, Mr. Fink, keep going.

MR. FINK: Simply put, Your Honor, there was a physical altercation in my office between Michael O'Connor and his brother while we were discussing the settlement conference.

10:09:24 I had a discussion with Ms. O'Connor, his father, his brother. His brother indicated he would try to take him to his condo, that we all agreed that that kind of, you know, behavior would not be conducive to settling the case. In fact, could, in fact, put --

THE COURT: Okay.

MR. FINK: -- you know, Mr. O'Connor's --

THE COURT: So what you're telling me in so many words is there is a lot of bad feelings about this settlement.

MR. FINK: It appears that there are.

10:09:51 THE COURT: I think it very much appears to everyone in the courtroom that there are.

So you have filed this motion for a proposed distribution of proceeds?

MR. FINK: We --

10:10:03 THE COURT: Is this your motion?

MR. FINK: That is. There is -- there are -- this really is seeking your guidance.

Obviously, we did not want to take a position contrary to that of Ms. O'Connor's. We do believe that, by

10:10:17 filing that motion, that we were certainly constructively

discharged and at that point, however, obviously if you find that the settlement was in place and enforceable, then we would move to distribute the settlement funds.

10:10:33 There would be three issues that would be remaining. One is the issue of the releases.

The second would be the issue of vested interests. Ms. O'Connor had a prior attorney that does have on its face apparent validity. My firm has an attorney's lien, and there is an Illinois Health Care and Family Services lien, statutory lien for payment for some of Michael's amounts. 10:10:55

Obviously, once I received notification from Ms. O'Connor, we did not pursue any of those issues further, so those -- those would have to be addressed prior to final distribution.

10:11:12 THE COURT: Okay.

MR. FINK: And I did --

THE COURT: Let's just stop.

What's the defendants' position?

MS. MURPHY: Defendants' position is that there was a valid settlement agreement entered at the settlement conference. In terms of distribution of the funds, we're willing to work with plaintiff's counsel on that. 10:11:18

THE COURT: Okay. At this point, I'm not going to weigh in on the distribution of the funds.

10:11:31 At this point, all I will say is there was a valid

settlement because Ms. O'Connor was here. She is the plaintiff in this case. She was well represented by Mr. Fink. A settlement was reached that was well above my recommended objective proposed settlement, which no one needed to reach at any point in time during our discussions. I told both sides that they were free to call it a day and we would not go any further, but both sides voluntarily kept going and reached a voluntary, intelligent and effective settlement.

At this point, I will retain jurisdiction to distribute, but I think I need to see what comes in in terms of what the lien is. You're representing from the prior law firm, Mr. Henderson's law firm, it's only 971.83; is that correct?

MR. FINK: In terms of their actual cost. There's an attorney lien for fees that my office would certainly work out with him as well.

THE COURT: Okay.

MR. FINK: And there's an amended distribution. I'm not sure if that made it to you or not.

THE COURT: Okay. Well, my view is from 25 years of judging, there's nothing to distribute yet until you obtain the proceeds.

So -- and before we get to that, there has to be settlements that are either signed by the plaintiff or that I will enter to enforce the settlement.

So it's going to be one way or the other, but until those proceeds actually get into your attorney's trust fund, there's nothing for me to rule upon in terms of distributing these proceeds.

10:13:27 So proceed with documenting the settlement, and we will go from there, but I'll retain jurisdiction to enforce the settlement that I participated in reaching.

MR. FINK: Very good.

THE COURT: That's all I'm going to say.

10:13:41 Thank you.

MR. FINK: Thank you, Your Honor.

MS. MURPHY: Thank you, Your Honor.

MS. DORY: Thank you, Your Honor.

MS. O'CONNOR: Thank you, Your Honor.

(Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kathleen M. Fennell* *November 26, 2018*

______________________ ____________________
Kathleen M. Fennell Date
Official Court Reporter